UNITED STATES *v.* DURST MFG. CO., INC. (No. 4943) [1]

[1] C. A. D. 700.

United States Court of Customs and Patent Appeals, January 9, 1959

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Samuel D. Slade* and *Seth H. Dubin,* trial attorneys, of counsel), for the United States.
*Allerton deC. Tompkins* for appellee.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, C.D. 1928, sustaining, in part, the importer's protest and holding that the merchandise in controversy should be classified as "sprinkler tops" under paragraph 390 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (GATT), T.D. 52739. The collector had classified the importation under paragraph 397 of the Tariff Act of 1930, as modified by GATT, T.D. 51802, as "articles or wares not specially provided for * * * composed wholly or in chief value of iron, steel, * * * or other metal * * *."

Paragraph 390 of the Tariff Act of 1930, as modified by the Torquay Protocol, T.D. 52739, provides for:

Bottle caps of metal, collapsible tubes, and sprinkler tops:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color_____ 17½% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by GATT, T.D. 51802, provides for:

Articles or wares not specially provided for, whether partly or wholly manufactured:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Composed wholly or in chief value of iron, steel, * * * or other metal * * *.
Other (except slide fasteners and parts thereof)_____ 22½% ad val.

The importation in question is the top part of a lawn sprinkler which rotates and sprays water when subjected to sufficient liquid pressure through the hollow base upon which it is supported. The sole witness in the case, testifying for the importer, stated that the merchandise was designed in 1952, and that the only name by which it is described in trade or commerce is "sprinkler top."

The sprinkler parts are described on the consignor's packing list as "Plumbing Parts * * * Base * * * [and] Top" and listed on

appellee's purchase order as "Majestic Sprinklers * * * Base * * * Top." The parts are advertised for sale as comprising a "plated revolving arm and Nozzles" and a "Cast Base."

The Customs Court held the merchandise dutiable under paragraph 390, as within the *eo nomine* classification for "sprinkler tops" and, in so doing, found no ambiguity in the said paragraph and therefore refused to consider any extrinsic aids to construction, relying upon the doctrine "that where no doubt exists as to the meaning of a term, extraneous aids must not be resorted to, for there is no need of construction where no ambiguity exists." *Thorens, Inc.* v. *United States*, 31 CCPA 125, C.A.D. 261.

Our function is to ascertain the legislative intent embodied within the paragraphs of the tariff act involved in this litigation. If the application of certain principles of statutory construction creates artificial barriers which preclude this court from achieving that goal, it is obvious that those principles have been misapplied. In this connection, the United States Supreme Court in the *United States et al.* v. *American Trucking Associations, Inc., et al.*, 310 U.S. 534, stated at page 543:

* * * Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. * * *.

Rules of construction are not controlling where a contrary legislative intent is apparent. *Brecht Corp.* v. *United States*, 25 CCPA 9, T.D. 48977. In particular, *eo nomine* designations need not be applied to merchandise which it appears Congress has not intended should be so classified. *United States* v. *H. Reeve Angel & Co., Inc.*, 33 CCPA 114, C.A.D. 324.

It is too well settled to require citation that resort to legislative history to determine the Congressional intent is proper where the statute applied is found to be ambiguous. We need decide no more than that the statutory term is ambiguous, i.e., that it has more than one common meaning, to justify reference to the legislative background herein.

First, an analysis of paragraph 390 itself creates sufficient doubt as to the legislative intent to warrant the use of every aid to construction. The terms "bottle caps of metal," "collapsible tubes" and "sprinkler tops" appear to have no relationship, and yet, it would be somewhat unusual to find a heterogeneous grouping in a single paragraph of the tariff act. Second, the designation "sprinkler top" itself is ambiguous. It could refer to children's toy tops which

sprinkle water when spun, fire extinguishing devices, sprinkler tops for bottles or anything, according to the appellee, that the importer desires to list under this nomenclature, including the merchandise at bar which is advertised as a "plated revolving arm and nozzles."

In view of the above discussion, we are of the opinion that the legislative intent expressed in paragraph 390 cannot be derived without the use of those relevant extraneous aids to construction which are available. We therefore turn to the legislative history of this paragraph to determine what the Congress meant by use of the term "sprinkler tops." Prior to 1913 there was no specific enumeration of "sprinkler tops" appearing in the tariff laws; rather, that merchandise known as "sprinkler tops" was dutiable under the "catch-all clause" in paragraph 199 of the tariff act of 1909 (36 Stat. 11, 33) as metallic "articles * * * not specially provided for * * *."[2]

The tariff act of 1913 (38 Stat. 114, 130) classified "bottle caps of metal, collapsible tubes, and sprinkler tops, * * *" together under paragraph 164 thereof, at the insistence of the manufacturers of the latter two items.[3] In the Summary of Tariff Information, 1920, prepared for the use of the House Committee on Ways and Means by the United States Tariff Commission, the following definition of "sprinkler tops" appears at page 263:

"*Sprinkler tops* are perforated metal caps or stoppers for bottles from which liquids, such as perfumery and toilet waters, are sprinkled."

During the 1921 hearings on revision of the tariff before the Committee on Ways and Means a domestic manufacturer testified that "sprinkler tops are used in connection with perfume bottles.[4]

Thereafter, in 1922, the Tariff Commission prepared and published a series of Tariff Information Surveys which were transmitted to the Committee on Ways and Means, one of which (C–28) described a sprinkler top as follows (p. 20):

In form a sprinkler top resembles a small tube having a flange projection about middle way. The flange is so constructed that when the tube is inserted through the cork of a bottle it rests upon the top of the cork. The end of the tube projecting above the flange has usually a screw top, which being removed the liquid contents of the bottle may be thrown out through the tube with a jerky motion of the hand. Another method of closing the tube is employed, in which a monel metal pin, or plug, is inserted through the length of the opening.

Sprinkler tops are used chiefly in the drug and chemical trades for perfume, toilet waters, liquid dentifrices, liquid soap, and liquid toilet articles of various kinds, also for various kinds of chemical preparations. They are used also on small metal cans containing oil.

---

[2] Notes on Tariff Revision, 1913; Senate Document No. 136, page 64.

[3] A manufacturer of collapsible tubes and sprinkler tops stated that "sprinkler tops are really bottle caps, being used for the same purpose, * * *." *Memo as to Proposed Duty on Collapsible Tubes and Sprinkler Tops*, Hearings, Committee on Ways and Means, House of Representatives, 62d. Cong., 3d Sess., p. 1937.

[4] Testimony of George H. Neidlinger, Hearings before the Committee of Ways and Means, House of Representatives, 66th Cong., 3d. Sess., p. 1073.

The aforesaid paragraph 164 of the tariff act of 1913 was reenacted as paragraph 391 of the Tariff Act of 1922 (42 Stat. 858, 887), and again as paragraph 390 of the Tariff Act of 1930 (46 Stat. 590, 627) without change in the enumerations therein. During this period the definition of "sprinkler tops" appearing in the 1920 Summary of Tariff Information was repeated verbatim in the Summary of Tariff Information, 1921, at 534, and the Summary of Tariff Information, 1929, at 887.

We have found no indication of any kind that Congress intended this paragraph to apply to lawn sprinkler parts.

The aforesaid legislative history furnishes a clear indication that Congress, in the Tariff Act of 1930, intended "sprinkler tops" to include various closures for bottles and other containers, designed to facilitate dispensing (sprinkling) liquids therefrom, and not the top parts of lawn sprinklers, imported herein.

However, the importer contends that the aforesaid Tariff Commission publications do not represent the intent of Congress nor should they be so construed in the absence of Congressional reports ratifying the construction found therein. Suffice it to say that such publications, placed before Congress for the purpose of expediting the legislative function, are well settled to be useful constructive aids to the court in its determination of the legislative intent. *United States* v. *J. Eisenberg, Inc.*, 43 CCPA 105, C.A.D. 616. In the instant case, the importer has failed to rebut the presumption of correctness of the collector's classification, which presumption is but strengthened by resort to such extrinsic aids.

The importer further contends that, since the merchandise at bar was not in existence at the time of the Tariff Act of 1930, the legislative history of that or preceding acts is not limiting. It is further argued that "tariff statutes are designed for the future and are to be interpreted in such a way as to include items that did not exist when the tariff law was written. * * *." The several cases cited for that proposition are deemed inapposite herein since the instant importation bears no relationship to that merchandise which we consider Congress referred to as "sprinkler tops." The fact that only a particular commodity was in existence at the time of enactment of the tariff provision "would not exclude other new articles *possessing similar characteristics* from the classification where the new articles *resemble the well known commodity in those particulars which the statute established as criteria of the classification.*" *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422. [Emphasis ours.] See also *United States* v. *Inter-Maritime Forwarding Co., Inc.*, 41 CCPA 107, C.A.D. 537, and *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669. In the instant case, no such resemblance has been made out.

For the reasons given, the judgment of the Customs Court is *reversed.*